JOHN T. GORMAN
Federal Public Defender
District of Guam

RICHARD P. ARENS
Assistant Federal Public Defender
First Hawaiian Bank Building
400 Route 8, Suite 501
Mongmong, Guam 96910
Telephone:   (671) 472-7111
Facsimile:   (671) 472-7120

Attorney for Defendant
RYAN JASON WALL

IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

| UNITED STATES OF AMERICA, | ) | CR 07-00025 |
|---|---|---|
| | ) | |
| Plaintiff, | ) | MEMORANDUM CONCERNING ISSUES |
| | ) | ON REMAND |
| vs. | ) | |
| | ) | |
| RYAN JASON WALL, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Defendant, RYAN JASON WALL, by and through undersigned counsel, Richard P. Arens, Assistant Federal Public Defender, submits the following memorandum outlining the reasons why the search of the DHL parcel in question was not authorized under 5 Guam Code Ann. Section 73102(2) or under the good faith exception to the warrant requirement.

## HISTORY OF THE CASE

### I. District Court of Guam.

On January 10, 2007, Ryan Jason Wall was indicted in the United States District Court of Guam for Conspiracy to Distribute Methamphetamine and Attempted Possession of Methamphetamine with Intent to Distribute in violation of 21 U.S.C. § 841(a)(1) and 846.

On February 23, 2007, Wall filed a Motion to Suppress 81 grams of Methamphetamine found in a DHL parcel which had been intercepted by the United States Drug Enforcement Agency (DEA). Wall argued that the seized evidence should be suppressed because there was no probable cause supporting the warrant. On March 16, 2007, the government filed a response to Wall's Motion to Suppress Evidence. On March 20, 2007, the district court orally denied Wall's motion.

### A. The Suppression Hearing.

The suppression hearing began on March 15, 2007. DEA Task Force Agent Marvin R. Desamito ("Desamito") testified that on December 29, 2006, at approximately 6:00 p.m., he received an anonymous telephone call. (Exhibit A, pg 4, ln 10-20).[1] The caller, a confidential informant ("CI"), told Desamito there was a DHL package on its way to Guam from Fife, Washington that contained about five ounces of crystal methamphetamine. (Exhibit A, pg 5, ln 23-25). The CI gave Desamito a DHL Tracking Number assigned to the package. (Exhibit A, pg 6, ln 18-21).

---

[1] The page numbers in Exhibit A refer to the stamped number located in the lower right hand corner of each page.

Desamito verified through the DHL website that there was a package with that tracking number which departed Fife, Washington on December 15, 2006. (Exhibit A, pg 7, ln 1-6). Desamito then contacted Guam Customs and Quarantine Officer Pete Ofeciar and requested that the package be held upon its arrival. (Exhibit A, pg 7, ln 11-17).

Later that evening, Desamito met with the CI. (Exhibit A, pg 8, ln 6-7). The CI stated that the package was addressed to Ryan Wall. (Exhibit A, pg 8, ln 11-13). The CI also informed Desamito that Wall received a previous DHL package containing ice on December 6, 2006. (Exhibit A, pg 9, ln 20-25). The CI provided no further information regarding Wall. Based on the telephone conversation and a brief face-to-face meeting with the CI, Desamito believed there was probable cause that drugs were in the package. (Exhibit A, pg 10, ln 9-13). Desamito believed the CI's knowledge of "the method, tracking number, points of origin, points of designation" established probable cause. (Exhibit A, pg 10, ln 21-25, pg 11, ln 1-7).

Desamito stated that the CI's knowledge of the December 6, 2006, package also led to his belief that drugs would be found in the December 29, 2006, package. (Exhibit A, pg 12, ln 14-25). Desamito stated there was no doubt in his mind as to the truth or falsity of the CI's claim that Wall received a package on December 6, 2006. (Exhibit A, pg 12, ln 19-23). Desamito, however, made no attempts to corroborate the December 6, 2006 delivery. (Exhibit A, pg 13, ln 14-16). He stated he did not know where to start. (Exhibit A, pg 13, ln 14-16). He stated that he did not know how to corroborate the information. (Exhibit A, pg 13, ln 14-16) He admitted he did not even call DHL to inquire about the alleged December 6, 2006 package. (Exhibit A, pg 13, ln 23-25, pg 14, ln 1).

3

On December 30, 2006, DEA Task Force Officer Michael Perkins ("Perkins") learned that the DHL package had arrived on Guam. (Exhibit A, pg 15, ln 14-19). Perkins, along with Guam Customs officers, retrieved the package and conducted a canine drug detector test. (Exhibit A, pg 15, ln 20-25). Perkins called Desamito and told him the drug detector test was negative. (Exhibit A, pg 16, ln 2-4). The negative drug dog results did not "alter [Desamito's] belief that crime was ongoing," because "the drug sniff was only one measure that [they] were going to use to gain more probable cause." (Exhibit A, pg 17, ln 7-14).

In the affidavit of probable cause Desamito stated that an x-ray of the package "showed items that were suspicious in nature and common with drug importation." (Exhibit A, pg 18, ln 7-11). On cross examination Desamito responded as follows:

> Q: What specifically is suspicious about a hair brush?
>
> A: This information was given to me from the officers at the scene. It was from their knowledge and experience.
>
> Q: They didn't tell you that there was a hairbrush in there, did they?
>
> A: No.
>
> Q: They didn't tell you all of the items in there, did they?
>
> A: No.
>
> Q: They didn't tell you there was a battery in there, did they?
>
> A: No.
>
> Q: They just said it was suspicious?
>
> A: Suspicious in nature and common with drug importation.

4

Q: You didn't ask them why it was suspicious in nature . . . , yet you filed an affidavit and gave it to the magistrate under oath; is that right?

A: Sir, at that time I trusted the training and experience, the x-ray Customs officer had.

Q: And so Perkins . . . said . . .we just x-rayed it and it looks suspicious, and you didn't follow up on what was suspicious about it before you wrote it in your sworn affidavit?

A: Officer Perkins informed me telephonically that there was suspicious items inside the package.

Q: And at that, you wrote the report, without any follow-up?

A: Later on when Officer Perkins returned to our office, he showed me the x-rays, and he explained to me what the Customs officers deemed suspicious.

(Exhibit A, pg 18-20).

On March 19, 2007, the second day of testimony began. The court stated that the affidavit used during the previous day's testimony was not the affidavit relied upon by the Magistrate Judge in issuing the search warrant. (Exhibit A, pg 21-22). The correct affidavit had the following hand-written notation: "[t]he CET determined the contents were organic in nature and through their training and experience consistent with contraband." (Exhibit A, pg 21-22). After Desamito met with the prosecutor and after he reviewed the correct affidavit, cross-examination resumed.

Desamito testified he first found out there was organic material thought to be in the package when Perkins returned to the office and showed him the x-rays. (Exhibit A, pg 23, ln 1-4). Desamito did not make the determination by looking at the x-rays himself. (Exhibit A, pg 23, ln 20-

5

22). Neither Customs nor Perkins told him the package had an organic appearance when it went through the x-ray. (Exhibit A, pg 23, ln 15-17). According to Desamito, he made the determination from the information he got from the Customs officers. (Exhibit A, pg 23, ln 8-9). Customs told him the package was "suspicious to contraband." (Exhibit A, pg 23, ln 12-14). When asked why he inserted the hand-written notations, Desamito stated that "Judge Manibusan requested for me to write in more detail as far as how I came to that determination." (Exhibit A, pg 24, ln 9-14).

When the examination of Desamito concluded, the court asked him how he got the information he wrote in paragraph 19 of the affidavit. (Exhibit A, pg 25, ln 16-25). He again responded that "[t]he x-ray showed items that were suspicious in nature and common with drug trafficking." (Exhibit A, pg 25, ln 16-25). When pressed by the court for clarification, Desamito contradicted himself and stated that Perkins mentioned the word organic when he returned to the office after x-raying the package. (Exhibit A, pg 26, ln 4-25, pg 27, ln 1-16).

Desamito indicated that Perkins said "that's what Customs officers informed [him]." (Exhibit A, pg 27, ln 13-16). Desamito explained that he did not incorporate the word "organic matter" into the original affidavit because he did not think it was necessary or important. (Exhibit A, pg 28, ln 7-21). Perkins testified that his official report did not mention anything about "organic material." (Exhibit A, pg 29, ln 1-11).

When Guam Customs Officer Joseph J. Gange ("Gange") testified, he was asked what information he conveyed to Perkins. (Exhibit A, pg 30, ln 22-25, pg 31, ln 1). Gange stated he told Perkins the x-ray was "consistent with possible contraband." (Exhibit A, pg 31, ln 22-25, pg 32, ln 1). Gange acknowledged there was no mention of "suspected organic material" in his

6

official report. (Exhibit A, pg 32, ln 7-13). When he was asked exactly what he told Perkins, he responded "[t]hat it possibly contained illicit narcotics." (Exhibit A, pg 33, ln 10-20).

### B. Judge's Order.

The district court's written order denying Wall's motion was filed on March 23, 2007. (Exhibit B). The court held that the "combination of verified information provided by the informant" coupled with the Customs officer's "belief that the package contained a substance organic in nature that was believed to be consistent with contraband" provided a substantial basis for the magistrate to issue the warrant. (Exhibit B, pg 5). The court made the following factual findings:

- that the tip included where the drugs were coming from and where they were to be sent;

- that the confidential informant (CI) provided a DHL tracking number which matched the tracking number on the package;

- that the officers actually met with the CI who provided the name of the defendant as the intended recipient;

- that the package matching the DHL tracking number given by the CI had arrived on Guam;

- that a background check of the defendant revealed that he had an outstanding warrant in Washington and was on probation for local charges; and

- that an x-ray of the package revealed that the package contained an organic substance consistent with the importation of drugs or controlled substance.

7

(Exhibit B, pg 4).

Quoting United States v. Leon, 468 U.S. 897 (1984), the court further held that "[i]n the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." (Exhibit B, pg 5-6).

Wall entered a conditional plea of guilty to Conspiracy to Distribute Methamphetamine Hydrochloride and Attempted Possession with Intent to Distribute. On June 21, 2007, Wall was sentenced to 57 months imprisonment to be followed by 36 months of Supervised Release. The judgment was filed on June 29, 2007. A timely Notice of Appeal was filed on July 6, 2007.

**II. Ninth Circuit Court of Appeals.**

On appeal, Wall argued that the district court erred in its denial of his Motion to Suppress Evidence because the information contained in the affidavit was not facially sufficient to support a finding of probable cause. Wall further argued that the affidavit was not sufficient to support a finding of probable cause because it relied on information provided by a confidential informant whose basis of knowledge and reliability was not established.

In its Answering Brief, the government argued that the information in the affidavit was sufficient to support a finding of probable cause and that the confidential informant was reliable. The government also argued, for the first time on appeal, that the DEA agents were not required to obtain a warrant because Guam Customs had an automatic, statutory right to open the package upon

8

discovering that the customs declaration did not match the contents.

Reversing the district court in part, the Ninth Circuit Court of Appeals held that the information in the affidavit was insufficient to support a finding of probable cause. (Exhibit C, pg 2). The Court noted that the affidavit supporting the warrant application contained two sources of information to establish probable cause: a confidential informant and conclusions drawn by customs officers after x-raying the package. (Exhibit C, pg 3).

As for the confidential informant, the Court concluded that the tip should have been given little weight since "the informant had no track record of reliability, did not reveal her/his basis of knowledge, and did not provide any predictive information about future events." (Exhibit C, pg 3-4). The DEA agents, the court noted, "verified only "innocent" information, which was just as consistent with legal activity as it was with the illegal activity the informant alleged." (Exhibit C, pg 4).

The Court further noted that the only additional information in the affidavit that could support a finding of probable cause was the handwritten notation that agents "determined the contents were organic in nature and through their training and experience [sic] consistent with contraband." (Exhibit C, pg 4). The Court concluded that the fact the package contained an organic product detracted, rather than added, to the indicia of contraband. (Exhibit C, pg 4). "The affidavit does not explain the meaning of the term "organic in nature," nor does it offer any explanation as to what made the contents consistent with contraband." (Exhibit C, pg 4). In fact, the Court noted, "the tip indicated that the package would contain methamphetamine, a synthetic compound-not an organic product." (Exhibit C, pg 4).

9

Despite reversing on the issue of probable cause, the Court remanded for the district court's consideration of whether the seizure was authorized under 5 Guam Code Ann. § 73102(2) or under the good faith exception to the warrant requirement. (Exhibit C, pg 7).

**SUMMARY OF ARGUMENT**

The agents cannot claim a good faith exception to the warrant requirement. The agents were reckless beyond measure in preparing the affidavit and could not have harbored an objectively reasonable belief in the existence of probable cause. The affidavit supporting application for search warrant was not supported by probable cause and the CI's reliability and basis of knowledge was never established.

The agents did not observe any suspicious activities nor were they informed of such observations. The agents did not check Wall's banking activity or wire transfer history. The officers merely had a tracking number that matched the package sent from Washington to Guam. They also had questionable and contradictory information concerning results of the x-ray. The CI's statements were not detailed nor sufficiently confirmed. There was no independent verification of the alleged prior delivery.

The CI's trustworthiness ends with the tracking number that matches the number on the package sent from Washington to Guam. This is the only information that was adequately confirmed by independent verification. Whether the CI had first hand knowledge was never determined. Whether the CI had observed suspicious activities previously was never determined.

Whether the CI even knew Wall was never determined. The CI never provided a physical description of Wall and never provided predictions or information concerning his activities.

10

There was no information concerning the basis for the CI's knowledge and no information about how the information was obtained. In fact, the CI never mentioned who the sender was. The CI also had no previous track record of reliability which severely lessens the tip's indicia of reliability.

Further, while Guam Customs officers may have the authority to search the contents of a package pursuant to the border search exception to the warrant requirement, the United States Drug Enforcement Agency did not. The search of the DHL package was not conducted at the border and it was not conducted by Guam Customs agents. Agents from Guam Customs did not supervise nor direct the search. In fact, they were not even present when the package was searched. The United States DEA may not avail itself of the border search exception to the warrant requirement. The border search exception is reserved exclusively to those agencies having jurisdiction over safeguarding the borders.

## ARGUMENT

**I.  The DEA Agents Could Not Have Relied on the Warrant in Good Faith Because the Affidavit Was So Lacking in Indicia of Probable Cause as to Render Official Belief in its Existence Objectively Unreasonable.**

Suppression of the evidence in this case is appropriate. The "good faith" exception to the exclusionary rule does not apply to the facts of this case. The warrant was not supported by probable cause and the search of the DHL package was therefore unconstitutional.

In <u>United States v. Leon</u>, the Supreme Court announced a "good faith" exception to the exclusionary rule. 468 U.S. 897 (1984). Working from the premise that the exclusionary rule is a judicially created, as opposed to a constitutionally required, remedy for Fourth Amendment

11

violations, the Court reasoned that where police conduct is "pursued in complete good faith," the rule's deterrent function "loses much of its force." Id. at 919 (quoting United States v. Peltier, 422 U.S. 531 (1975)).

The Court stressed that the good faith test is an objective one. Courts do not ask what the executing officer believed, or could have believed, but "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." Id. at 922, United States v. Clark, 31 F.3d 831 (9th Cir. 1994). While this inquiry is necessarily tied to the facts of each case, the Supreme Court has identified at least four situations in which reliance on a warrant cannot be considered objectively reasonable, and therefore the good faith exception cannot apply:

1. When the affiant knowingly or recklessly misleads the judge with false information;

2. When the judge wholly abandons his or her neutral role;

3. When the affidavit is so lacking in indicia of probable cause that official belief in its existence is objectively unreasonable; and

4. When the warrant is so facially deficient that executing officers cannot reasonably presume it to be valid (i.e., it fails to specify the place to be searched or the things to be seized).

Leon, 468 U.S. at 914, United States v. Johns, 948 F.2d 599 (9th Cir. 1991).

The Leon good faith exception cannot apply in this case. The affidavit was so deficient that any official belief in the existence of probable cause must be considered unreasonable.

On appeal, the Ninth Circuit specifically noted that the affidavit contained two

12

sources of information to establish probable cause: (A) conclusions drawn by customs officers after x-raying the package and (B) a confidential informant. The court held that under the circumstances, neither was sufficient to sustain a finding of probable cause.

### A. Organic in Nature and Consistent with Contraband.

The Magistrate Judge realized the deficiency in the affidavit and, according to Desamito, requested more detail concerning why the package was "suspicious to contraband." At that point, Desamito inserted the following handwritten notation in the affidavit: "[t]he CET determined the contents were <u>organic</u> in nature and through their training and experience consistent with contraband."

Apparently, the Magistrate Judge felt the handwritten notation sufficed to establish probable cause. The Court of Appeals did not. The Court found it problematic that the affidavit did not explain the meaning of "organic in nature," and it did not offer any explanation as to what made the contents consistent with contraband. Rather, the Court found "the fact that the package contained organic product detracted, rather than added, to the indicia of contraband." This is so, the Court stated, because "the tip indicated that the package would contain methamphetamine, a synthetic compound-not an organic product."

Given Desamito's claimed experience with drug enforcement (see affidavit pg 1-5), he cannot claim an objectively reasonable reliance on the search warrant. It is not objectively reasonable to expect methamphetamine in a package containing an "organic" substance consistent with contraband.

13

### B. The Confidential Informant.

The Ninth Circuit concluded that under the totality of the circumstances analysis, "the confidential informant's tip should have been given little weight" in the Magistrate's probable cause determination. Court's should consider several factors when analyzing the reliability of an informant's tip. The factors include: whether the informant is known or anonymous, whether the informant has a proven track record of reliability, the informant's basis of knowledge, and whether the informant "provides detailed predictive information about future events that is corroborated by police observation." United States v. Rowland, 464 F.3d 899 (9th Cir. 2006).

In light of these factors, the Court noted that "the informant had no track record of reliability, did not reveal her/his basis of knowledge, and did not provide any predictive information about future events." According to the Court, it was not enough that the confidential informant met in person with Agents Desamito and Perkins.

In denying Wall's request for suppression of evidence, the district court relied, in part, on the following information: that the tip included where the drugs were coming from and where they were to be sent, that the CI provided a DHL tracking number which matched the tracking number on the package, and that the package matching the DHL tracking number had arrived on Guam.

The Ninth Circuit rejected the court's reliance on this information and held that the "DEA agents verified only '"innocent"' information, which was just as consistent with legal activity as it was with the illegal activity the informant alleged." Citing United States v. Mendonsa, 989 F.2d 366 (9th Cir. 1993), the Court stressed that "mere confirmation of innocent static details is

14

insufficient to support an anonymous tip."

Again, given Desamito's claimed experience with drug enforcement (see affidavit pg 1-5), he cannot claim an objectively reasonable reliance on the search warrant. It is not objectively reasonable to expect methamphetamine in a package where the information provided by an informant is just as consistent with legal activity as it is with illegal activity. This is especially true where the informant had no track record of reliability, did not reveal her/his basis of knowledge, and did not provide any predictive information of future events.

**II. The United States Drug Enforcement Agency Is Not Authorized to Conduct a Border Search and There Is No Provision in Law Allowing Guam Customs to Transfer its Authority to Search Without a Warrant to Another Agency.**

5 Guam Code Annotated Section 73102(2) does not extend the border search exception to the warrant requirement to the United States DEA. Section 73102(2) is a local law and its scope is exclusively limited to Guam Customs Officers. Under this section: "[a]ny Customs Officer may: (1) arrest persons who violate a prohibition contained in Article 6 of Title 9 GCA Chapter 67; and (2) make seizures of any controlled substance imported into Guam in violation of Article 6 of Title 9 GCA Chapter 67." While Guam Customs may have authority under Guam law to search without a warrant, the United States DEA does not. Further, there is no provision in the law allowing Guam Customs to transfer its authority to search without a warrant to the United States DEA.

Citing United States v. Rowland, 464 F.3d 899 (9th Cir. 2006), the government asserted on appeal that "Drug Enforcement Agents were not required to obtain a Warrant because

15

Guam Customs ha[d] an automatic, statutory right to open the package upon discovering that the customs declaration did not match the contents." Wall acknowledges that based on Rowland "Guam Customs officers are statutorily authorized [under the Guam Statute] to arrest persons and seize methamphetamine imported into Guam." However, the holding in Rowland is not as broad as the government would like. Rowland does not address the relationship between Guam Customs and other law enforcement agencies as it relates to border searches. Case law governing the relationship between United States Customs and other U.S. law enforcement agencies sheds light on the scope and limitations of border searches between different government agencies.

It is well established that "searches made at the border, pursuant to the long-standing right of the sovereign to protect itself by stopping and examining persons and property crossing into this country, are reasonable simply by virtue of the fact that they occur at the border . . . . " United States v. Ramsey, 431 U.S. 606 (1977). Border searches, whether or not made pursuant to probable cause or a warrant, are per se reasonable under the fourth amendment. United States v. Schoor, 597 F.2d 1303. (9th Cir. 1979). However, the border search exception to the search warrant requirement only applies to certain law enforcement agencies.

Under 19 U.S.C. § 482, a United States Customs Officer is authorized to search any trunk or envelope, wherever found, in which [the officer] . . . may have a reasonable cause to suspect there is merchandise which was imported contrary to law; and if any such officer . . . shall find any merchandise . . . he shall seize and secure the same for trial. Alexander v. United States, 362 F.2d 379 (1966). "In conferring upon Customs officers such broad authority . . ., the Congress has in effect declared that such a search which would be 'unreasonable' within the meaning of the fourth

16

amendment, if conducted by police officers in the ordinary case, would be a reasonable search if conducted by Customs officials in lawful pursuit of unlawful imports." Id. at 381.

In United States v. Soto-Soto, 598 F.2d 545 (9th Cir. 1979), the court declared that section 482 "sets forth the requirements imposed by Congress for a valid border search." The only persons empowered to stop and search, the court stated, are "officers or persons authorized to board or search vessels." They may stop, search, and examine any "vehicle, beast or persons" when they suspect there is merchandise which is subject to duty or is illegally introduced into the United States. The premise of Soto-Soto, is as follows: Section 482 represent[s] special delegation of authority to customs officials to conduct border searches. The Ninth Circuit has upheld warrantless border searches conducted by United States Customs Service, United States Border Patrol and the United States Coast Guard. Soto-Soto, 598 F.2d at 548. Searches conducted by other law enforcement agents are not considered border searches simply because they occur at the border. Id. at 549.

In Soto-Soto, an agent of the Federal Bureau of Investigation (FBI) was inspecting automobiles as they entered the United States from Mexico. After opening the hood of one vehicle, the agent discovered packages containing marijuana. The agent did not seek or receive consent to search and he had not procured a warrant. In upholding the district court's suppression of evidence, the Ninth Circuit Court of Appeals held that the search failed to qualify as a section 482 "border search". Although the search was conducted at the border, the court noted, it "was conducted by an FBI agent not a customs or immigration officer." The Court further noted that "[t]here was no delegation of authority to th[e] agent to conduct th[e] search." Id. at 549. Like the FBI agent in Soto-Soto, neither Desamito nor Perkins were authorized under section 482 to conduct border

17

searches and there was no delegation of authority for either to conduct the search.

For federal agencies, two criteria must be met to invoke the border search exception to the warrant requirement. First, the search must be conducted by United States Customs, United States Border Patrol or the United States Coast Guard. Second, the search must be conducted at the border.[2] The search at issue in this case fails to meet either criteria. The search of the package was not conducted by Guam Customs, United States Customs, Border Patrol or the Coast Guard. The search was conducted solely by task force agents assigned to the United States DEA. In addition, the search was not conducted at the border or its functional equivalent. The package was removed from the airport and later searched at the office of the DEA. Given the law and facts of this case, the DEA may not avail itself of the border search exception to the search warrant requirement.

## **CONCLUSION**

The agents cannot claim a good faith exception to the warrant requirement. The agents were reckless in preparing the affidavit and could not have harbored an objectively reasonable belief in the existence of probable cause. The affidavit supporting application for search warrant was not supported by probable cause and the CI's reliability and basis of knowledge was never established.

While Guam Customs Officers may have the authority to search the contents of a package upon reasonable suspicion, they did not search the contents of the DHL package in question. The search of the DHL package was not conducted at the border and it was not conducted

---

[2]The "functional equivalent" doctrine permits border searches without warrant or probable cause at places other than actual border where travelers functionally enter or exit the country. United States v. Whiting, 781 F.2d 692 (9th Cir. 1986).

by Guam Customs agents. Agents from Guam Customs did not supervise nor direct the search. In fact, they were not even present when the package was searched. The DEA may not avail itself of the border search exception to the warrant requirement. The border search exception is reserved exclusively to those agencies having jurisdiction over safeguarding the borders.

DATED: Mongmong, Guam, August 13, 2008.

/s/ RICHARD P. ARENS

*Richard P. Arens*
Assistant Federal Public Defender
District of Guam
Phone: (671) 472-7111
Facsimile: (671) 472-7120
GMT + 10:00 Hours

Attorney for Defendant
RYAN JASON WALL

19

# CERTIFICATE OF SERVICE

I, RICHARD P. ARENS, hereby certify that a true and exact copy of the foregoing document was electronically filed with U.S. District Court and electronically served by the U.S. District Court Clerk's Office to the following on August 13, 2008:

>ROSETTA SAN NICOLAS
>Assistant United States Attorney
>Sirena Plaza
>108 Hernan Cortez, Ste. 500
>Hagatna, Guam  96910
>
>Attorney for Plaintiff
>UNITED STATES OF AMERICA

DATED: Mongmong, Guam, August 13, 2008.

/s/ RICHARD P. ARENS



Attorney for Defendant
RYAN JASON WALL