ryanwallmemo.wpd

LEONARDO M. RAPADAS
United States Attorney
ROSETTA L. SAN NICOLAS
Assistant U.S. Attorney
Sirena Plaza Suite 500
108 Hernan Cortez Avenue
Hagatna, Guam 96910
Telephone: (671) 472-7332
Telecopier: (671) 472-7334

Attorneys for the United States of America

IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

| UNITED STATES OF AMERICA, | ) | CRIMINAL CASE NO. 07-00025 |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | **UNITED STATES' MEMORANDUM** |
| RYAN JASON WALL, | ) | |
| Defendant. | ) | |

On May 6, 2008, the United States Court of Appeals for the Ninth Circuit issued a Memorandum finding that there was insufficient probable cause to support the warrant. The Ninth Circuit remanded the matter for consideration by the U.S. District Court to consider: 1) whether seizure of the package was authorized under 5 Guam Code Annotated § 73102(2); and 2) whether the good faith exception of <u>U.S. v. Leon</u>, 468 U.S. 897 (1984) is applicable.

The Government files this Brief in support of the application of the <u>Leon</u> "good faith" exception, and as an authorized seizure pursuant to Guam's statute.

**STATEMENT OF THE FACTS**

On December 29, 2006, at 6:00 p.m., Drug Enforcement Administration ("DEA") Task Force Officer Marvin R. Desamito received an anonymous telephone call. Officer M.R.

Desamito identified himself as a Task Force Officer. The caller informed him that a D.H.L. package containing "ice" was en route to Guam. The caller provided the Officer with D.H.L. Tracking Number 8329724874. The caller stated that the package was originally sent from Fife, Washington to Guam on December 15, 2006. Officer Desamito verified with the D.H.L. Website that a package bearing this tracking number was actually sent on December 15, 2006 to Guam. After confirming the informant's information, Desamito placed a lookout for the D.H.L. package with Guam Customs Officer Peter Ofeciar.

The Meeting With the Confidential Informant.

On December 29, 2006, at 7:00 p.m., DEA Task Force Officers Desamito and Michael C. Perkins personally met with the caller in Hagatna, Guam. The meeting lasted between two to three hours. The confidential informant stated that the D.H.L. package was sent to Ryan Jason Wall and contained the drug "ice". The informant stated that earlier, on December 6, 2006, Ryan Jason Wall had previously received a D.H.L. package containing five ounces of the drug "ice" which was concealed in bath products.

After the meeting, Desamito conducted a criminal history check for Ryan Jason Wall and learned that Ryan Jason Wall is currently on probation on Guam for charges of Assault and Family Violence, Failure to Appear, Violation of a Court Order, and Assault. An Arrest Warrant was also issued for Wall in Pierce County, Tacoma, Washington. Desamito contacted Pierce County, Tacoma, Washington, to verify that the Ryan Wall arrested on Guam is the same person who was wanted in Washington State. A criminal history check was performed for the known informant, the check indicated no arrests or convictions.

The Arrival of the Package, X-Ray, and Dog Sniff.

On December 30, 2006, at 8:00 a.m., the D.H.L. package arrived on Guam.

Customs Officer Joseph Gange observed the package. He noted that the D.H.L. package was omitted from the airline manifest. The package was routed from Fife, Washington, to Los Angeles, California, to China, and then to Guam. Although the package was sent from a

2

commercial company, the addresses were hand written. The corners of the package were sealed with tape, indicating a common method to conceal scents. The external packaging label described the contents of the package as containing bath products and plush toys.

Customs Officer Gange x-rayed the package. Instead of plush toys, the x-ray showed a container and small bottles. Gange testified that based on the x-ray, the customs declaration was inconsistent with the contents within the package. One of the bottles inside the package appeared to have an object within the bottle, inconsistent with a liquid. The x-ray of the contents of the bottle showed up white, indicating an organic substance. The package was packed tightly, to prevent shifting. Based on his eleven years experience with x-rays, Customs Officer Joe Gange concluded that the contents of the package were consistent with illegal contraband. Customs Officer Gange testified that because the package was consistent with possible contraband, he had authority to open the package as a Guam Customs Officer. He informed Officer Perkins of his conclusions.

A cursory sniff was conducted by the Guam Customs and Quarantine Drug Detector Dogs, with negative results. The package was secured in the Customs Enforcement Team vault at the Guam International Airport.

On December 30, 2006, the DEA Agents obtained a Search Warrant from Magistrate Judge Joaquin V.E. Manibusan.

<u>Execution of the Warrant</u>.

On December 31, 2006, the Warrant was executed and the D.H.L. package opened at the Guam Resident Office by Customs Officers. The D.H.L. package was identified as 8329724874. The package was wrapped in brown paper with clear packaging tape on the ends.

//
//
//
//

3

The package was addressed as follows:

> From: D.W. Duley,
> 4333 S. Yakima
> Tac. Wa. 98414
>
> To: Ryan Wall
> 3221 Pale San Vitores Road
> Tumon, Guam

Inside the package were two separate boxes. Both boxes had metallic ribbon, newspaper, and peppermint candy canes attached to the exterior. One box held a clear plastic case containing a bottle of pink colored liquid shower gel, and a rectangular clear plastic box of colored crystals. The second box held liquid soap products. The package also included Energizer batteries and a penny. The dry crystals and the crystals in the liquid were field tested with the Marquis Reagent kit which resulted in a positive test for methamphetamine. The packages contained 118.9 gross grams of crystal methamphetamine or "ice".

Controlled Delivery.

DEA Agents replaced the methamphetamine with a "sham" product and placed the package back into the mail delivery system. Ryan Jason Wall provided D.H.L. with tracking number 8329724874, and received the package.

On January 3, 2007, an Indictment was returned charging Ryan Jason Wall with the offenses of Conspiracy to Distribute Methamphetamine in violation of 21 U.S.C. §841(a)(1) and §846 and Attempted Possession of Methamphetamine Hydrochloride With Intent to Distribute in violation of 21 U.S.C. § 841(a)(1) and §846.

The Suppression Hearing & Ruling by the Ninth Circuit.

A Suppression Hearing was held on March 15, 2007. District Judge Frances M. Tydingco-Gatewood denied defendant's Motion to Suppress issuing a ruling that based on the totality of the circumstances, the Magistrate Judge had a substantial basis for concluding that probable cause existed. A conditional plea was entered.

On May 6, 2008, the Ninth Circuit found the information in the affidavit insufficient to

4

sustain a finding of probable cause. The case was remanded for the District court to make findings and conclusions on the applicability of the good faith exception in <u>Leon,</u> and the applicability of a seizure under 5 G.C.A. § 73102(2).

Like the facts in <u>U.S. v. Leon</u>, 104 S. Ct. 3405 (1984), this case has "create(d) disagreement among thoughtful and competent judges as to the existence of probable cause."

**ARGUMENT**

**I. THE <u>LEON</u> GOOD FAITH EXCEPTION TO THE FOURTH AMENDMENT EXCLUSIONARY RULE APPLIES.**

The officers acted in objective good faith relying on the magistrate's determination that there was sufficient probable cause. The <u>Leon</u> good faith exception applies.

In <u>U.S. v. Leon</u>, 104 S. Ct. 3405 (1984), a confidential informant told police that drugs were being sold from two Burbank, California residences. Police Officers conducted surveillance and saw several persons with prior criminal histories frequenting the residences. Alberto Leon was among these persons. Two persons were seen arriving at the residence and leaving carrying small packages, two others were seen boarding a flight to Miami. Based on these observations, an affidavit summarizing these facts was prepared. <u>U.S. v. Leon</u>, 104 S. Ct. 3405, 3410 (1984).

Based on the affidavit, Officer Cyril Rombach prepared an application for a warrant to search. A facially valid search warrant was issued and a large amount of drugs were located. Leon and others were indicted and charged with conspiracy to possess and distribute cocaine.

Leon filed a motion to suppress evidence. After an evidentiary hearing, the District Court concluded that this case was a "close one" and the affidavit was insufficient to establish probable cause. <u>U.S. v. Leon</u>, 104 S. Ct. 3405, 3410. The Government argued that the Fourth Amendment exclusionary rule should not apply where evidence was seized in reasonable, good-faith reliance on a search warrant. <u>Leon,</u> 104 S. Ct. 3405, 3410. The District Court denied the government's motion for reconsideration.

5

The Ninth Circuit affirmed, holding that the informant's credibility was not established, there were no facts indicating the basis for the informant's statements, and that the information was stale. Leon, 104 S. Ct. 3405, 3411. The government petitioned for certiorari on a single issue: whether the Fourth Amendment exclusionary rule should be modified so as not to bar the admission of evidence seized in reasonable, good faith reliance on a search warrant that is subsequently held to be defective. Id, at 3411.

The Supreme Court declined "to adopt a per se or "but for" rule that would render inadmissible any evidence that came to light through a chain of causation that began with an illegal arrest." Leon, 104 S. Ct. 3405, 3414. "As we discuss below, our evaluation of the costs and benefits of suppressing reliable physical evidence seized by officers reasonably relying on a warrant issued by a detached and neutral magistrate leads to the conclusion that such evidence should be admissible in the prosecution's case in chief." Leon, 104 S. Ct. 3405, 3415. The principal purpose of the exclusionary rule is to deter police misconduct, and in most cases in which a police officer has obtained a warrant from a magistrate, "there is no police illegality and nothing to deter." Id. At 920-921.

The Supreme Court held that, even if an affidavit upon which a search warrant is based is insufficient to demonstrate probable cause, evidence seized by law enforcement officers acting in objectively reasonable good-faith reliance upon the warrant is admissible." Leon, 104 S. Ct. At 3420-21. "Issuance of a warrant by a magistrate normally suffices to establish good faith on the part of law enforcement officers who conduct a search pursuant to a warrant." United States v. Craig, 861 F.2d 818, 821 (5th Cir. 1988).

The good faith exception applies except in a few carefully defined situations where it is "plainly evident that a magistrate or judge had no business issuing a warrant." Massachusetts v. Sheppard, 468 U.S. 981, 980 (1984). Suppression remains an appropriate remedy [1] if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the

6

truth; ...[2] in cases where the issuing magistrate wholly abandoned his judicial role ..., [3] if a warrant is based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and [4] where the warrant is so facially deficient - ie., in failing to particularize the place to be searched or the things to be seized -that the executing officers cannot reasonably presume it to be valid. Leon, 104 S. Ct. At 3421. None of these four instances apply in this case and the officers acted in an objectively reasonable manner.

"In short, where the officer's conduct is objectively reasonable, excluding the evidence will not further the ends of the exclusionary rule in any appreciable way; for it is painfully apparent ... the officer is acting as a reasonable officer would and should act in similar circumstances. Excluding the evidence can in no way affect his future conduct unless it is to make him less willing to do his duty." Stone v. Powell, 428 U.S. at 539-540. "This is particularly true,, we believe, when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope. In most such cases, there is no police illegality and thus nothing to deter. It is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment. In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient. "Once the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law." Leon, at 3420.

Whether the officers acted in good faith is an easy determination. "Searches pursuant to a warrant will rarely require any deep inquiry into reasonableness." Leon, at 3421 citing Illinois v. Gates, 462 U.S. at 267, for "a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has "acted in good faith in conducting the search." Leon, at 3421 citing United States v. Ross, 456 U.S. 798.

Here, the officers acted in an objectively reasonable manner. They took every step that

7

could reasonably be expected of them and relied on a warrant sanctioned by the Magistrate Judge. The Magistrate Judge is not adjunct to the law enforcement team, rather is a neutral judicial officer with no stake in the outcome of any particular prosecution. Reliance on the independent determination of the Magistrate Judge constitutes good faith. Evidence is only suppressed in an "unusual case" and only where suppression will deter future illegal police conduct. There are no issues that the magistrate judge who issued the warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth. The Magistrate Judge did not wholly abandon his judicial role.

Defense contends that the third situation of Leon is in issue, that the affidavit is so lacking indicia of probable cause that official belief in its existence is objectively unreasonable.

Leon established that for the good faith exception to apply, the officer's affidavit must establish at least a colorable argument for probable cause. Leon, 468 U.S. at 923. "The Supreme Court framed the inquiry as whether the affidavit is "sufficient to create disagreement among thoughtful and competent judges as to the existence of probable cause." Leon, 468 U.S. at 926.

The warrant itself is not based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. The affidavit contains a colorable showing of probable cause. Notably, the informant was not an anonymous informant, rather was a known informant which the Officers met in a face to face confrontation. The fact that the informant met with the Officers in a face to face confrontation bolsters the good faith analysis. The Officers were able to evaluate the informant's reliability and credibility during the encounter and determined that he/she was reliable. This presents a colorable argument for probable cause. The official belief in the existence of probable cause is objectively reasonable.

In U.S. v. Clark, 1 F.3d 831, 832 (9th Cir. 1994), Officers received anonymous letters which stated that Clark lived in Missouri and is affiliated with Yarbro, a fugitive wanted for

marijuana offenses. There was no information provided which indicated that there was illegal drug activity or a marijuana cultivation operation. Officer Cayford then submitted an affidavit which contained generalized assumptions about the characteristics of marijuana cultivators, particularly that they have high electricity usage to provide light to growing plants and that there were alternative heat sources. The Ninth Circuit held that the anonymous tip contained no information regarding marijuana cultivation. The Ninth Circuit held that the tip was deficient, there was no information which proved that the tip was reliable, there was no basis for the tipster's knowledge, and law enforcement took no steps to corroborate the information. Clark, at 836. In spite of this finding, the Ninth Circuit held "Although we are satisfied that the affidavit was insufficient to establish probable cause, and the question of objective reasonableness in relying on the warrant is a close one, we cannot say that the affidavit was 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Clark, at 836. "There was enough information so that objectively reasonable officers were entitled to rely on the magistrate judge's determination." Clark, at 836. "Consequently, although we conclude that there was no probable cause to search Clark's home, we refuse to require that the evidence be suppressed, because the officer's reliance on the search warrant was objectively reasonable." Clark, at 836.

Like in Clark, the inquiry is one of objective reasonableness. The Officers reasonably would have known that this search is legal. This is not a situation where a reasonably well trained officer would have known that this particular search was illegal. The Officers had a colorable argument for the existence of probable cause. The warrant is not facially deficient. It delineated the scope of the search and the thing to be searched. The executing officers can reasonably presume the warrant issued by the Magistrate to be a valid warrant. There has been no illegal police conduct. An objective police officer could have found the existence of probable cause given these facts. Because the Officers relied on the calm and objective Magistrate's determination that probable cause existed, there is nothing to deter and the good

9

faith exception applies.

**II. GUAM CUSTOMS OFFICERS ARE AUTHORIZED BY STATUTE TO SEIZE THE PACKAGE. THE OFFICER'S RELIANCE ON THE STATUTE CONSTITUTES GOOD FAITH.**

The Officers acted in good faith in reliance upon the statute. In <u>Illinois v. Krull</u>, 107 S. Ct. 1160 (1987), the Supreme Court recognized that the Fourth Amendment exclusionary rule does not apply to evidence obtained by police who acted in objectively reasonable reliance upon a statute authorizing a warrantless administrative search which is later found to be unconstitutional. Applying the rational of deterrence in <u>Leon</u>, the Supreme Court held "the application of the exclusionary rule to suppress evidence obtained by an officer acting in objectively reasonable reliance on a statute would have as little deterrent effect on the officer's actions as would the exclusion of evidence when an officer acts in objectively reasonable reliance on a warrant. Unless a statute is clearly unconstitutional, an officer cannot be expected to question the judgment of the legislature that passed the law. If the statute is subsequently declared unconstitutional, excluding evidence obtained pursuant to it prior to such a judicial declaration will not deter future Fourth Amendment violations by an officer who has simply fulfilled his responsibility to enforce the statute as written. To paraphrase the Court's comment in *Leon*: "Penalizing the officer for the [legislature's] error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." Ibid." <u>Illinois v. Krull</u>, 107 S. Ct. 1160, 1167.

The Ninth Circuit has held that an officer acting in reliance on a statute which is later determined to be unconstitutional can still constitute good faith on the part of the officers. Reliance on a valid statute constitutes good faith.

In <u>U.S. v. Rowland</u>, 464 F3d 899 (9th Cir. 2006), the Ninth Circuit recognized that Guam Customs Officers may make warrantless seizures of any controlled substance imported into Guam pursuant to a valid statute.

> "Any [Guam] Customs Officer may: (1) arrest persons who violate a prohibition contained in Article 6 of Title 9 [Guam Code Annotated] Chapter 67; and (2)

10

make seizures of any controlled substance imported into Guam in violation of Article 6 of Title 9 [Guam Code Annotated], Chapter 67..." Guam Code Anno. §73102(1), (2). Article 6, Chapter 67 is codified at section 67.600-.608 of Title 9 of the Guam Code, and pertains to "Importation and Exportation" of controlled substances. Specifically, section 67.601 of title 9 makes it unlawful "to import into Guam any controlled substance in Schedule I or II of this Act," subject to exceptions for approved medical and scientific imports. 9 Guam Code Ann. §67.601(a). Methamphetamine is a Schedule II substance. See 9 Guam Code Ann. §67.205 (defining Schedule II drugs as those listed in Appendix B); 9 Guam Code Ann. App. B(C)(2)("methamphetamine"). It thus appears that Guam Customs officers are statutorily authorized to arrest persons and seize methamphetamine "imported into Guam." Rowland at 904.

Here, the Officers relied on a valid statute. Their good faith reliance on a valid statute constitutes good faith.

This authority of customs to search was first addressed in People of Territory of Guam v. Sugiyama, 846 F.2d 570 (9th Cir. 1988), as amended in 859 F.2d 1428. There, the defendant had shipped marijuana from Palau to Guam. When she arrived at air cargo to pick up her second consignment, a Guam Customs officer patted her down and found 10 bags of marijuana on her person. She contended that Guam had no customs authority, and accordingly could not legally search her person. The Ninth Circuit disagreed. It noted that Congress had specifically exempted the territories, including Guam, from the Tariff Act of 1930. "Congress' conscious choice to exclude Guam from the provisions of the Tariff Act, in view of its plenary power over Guam, acted as a delegation of customs authority to Guam." Id. at 571. It cited 19 C.F.R. § 7.8 n 5, in which the Secretary of the Treasury declared that the territories were "not within the customs territory of the United States. Importations into those islands are not governed by the Tariff Act of 1930 or these Customs Regulations . . . . The Customs administration of Guam is under the Government of Guam." The court concluded that "Guam has customs authority." Id. at 572. In its amended opinion filed October 31, 1988, 859 F.2d 1428, the court noted that its decision was not based on whether the customs laws being enforced were those of Guam statutes or statutes of the United States.

In fact, the Guam Customs & Quarantine Agency enforces Guam customs law, and is permitted to search the person and luggage of anyone seeking entry into Guam. Guam Public

11

Law 22-112, effective October 1, 1994, separated the Guam Customs and Quarantine Agency from the Department of Commerce. Section (b) authorized the Agency to implement and enforce the provisions of Chapter II of Title XLIV of the Government Code, its rules, regulations, and executive orders relative to customs and quarantine functions of the Government of Guam. Title 5 GCA § 73102 gives Guam Customs officers the power to seize controlled substances imported into Guam in violation of the Controlled Substances Act, Title 9, and to arrest persons in violation of this Act. Governor's Memorandum 33-52 (1952) authorized Guam Customs officers to inspect the persons, baggage and merchandise arriving on Guam. This memorandum is still in effect. Accordingly, Guam law gives Guam Customs officers the authority to search the person of any passenger arriving on Guam, regardless of their point of origin. This court reached the same conclusion in <u>United States v. Vance</u>, 62 F.3d 1152 (1995) and in <u>U.S. v. Rowland</u>, 464 F3d 899 (9th Cir. 2006). [1]

Guam Customs officers had the authority to search defendant's package with or without cause. Customs Officer Gange noted an inconsistent declaration pertaining to the contents of the package. The declaration stated that the package contained plush toys. The X-ray of the package revealed no plush toys. Even without the inconsistent declaration, Guam Customs had the statutory authority to search the package with or without suspicion. This statutory authority bolsters the good faith analysis. The Agents were aware of the Guam Customs' authority and relied on it as additional authority to search the package. The package stored at C.E.T. Customs and was opened by Officer Gange and Jeff Palacios, Guam Customs Officers. The Officer's reliance on a statute which has been deemed valid by the Ninth Circuit demonstrates good faith on the part of the Officers. The <u>Leon</u> exception should apply.

### **CONCLUSION**

The officer's good faith reliance on the magistrate's determination of probable

---

[1] Defense argues that the Government cited <u>U.S. v. Rowland</u> for the first time on appeal. This is incorrect. The Government cited <u>U.S. v. Rowland</u> during the March 20, 2007 Motion to Suppress, Transcript of Proceedings, p. 220.

cause is objectively reasonable. The officer's good faith reliance on a lawful criminal statute is also objectively reasonable. The officer's determination that there is a colorable argument for probable cause is objectively reasonable because a reasonably trained Officer could determine that probable cause existed under these facts. The affidavit does not lack all indicia of probable cause. Official belief that there was probable cause existed because the confidential informant met the officers in a face to face encounter. This is objectively reasonable. The good faith exception to the exclusionary rule should apply. Alternatively, the Officers are authorized to perform a warrantless seizure of the package pursuant to Guam law.

Dated this 19th day of August, 2008.

LEONARDO M. RAPADAS
United States Attorney
Districts of Guam and NMI

By:  /s/ Rosetta L. San Nicolas
ROSETTA L. SAN NICOLAS
Assistant U.S. Attorney

13