DISTRICT COURT OF GUAM

TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>RYAN JASON WALL,<br><br>Defendant. | Criminal Case No. 07-00025<br><br>**ORDER RE: MOTION TO SUPPRESS EVIDENCE AND STATEMENTS** |

This matter came before the court on March 31 and April 14, 2009, for an evidentiary hearing on a remand from the Ninth Circuit Court of Appeals.[1] After hearing the testimony of witnesses and argument from counsel, the court reaffirms its order on the Defendant's Motion to Suppress. For the reasons discussed herein, the court sets forth more fully the reasons for its ruling.

## I. FACTUAL BACKGROUND[2]

On Friday, December 29, 2006, at approximately 6:00 p.m., Drug Enforcement

---

[1] On March 15, 2007, this court heard the Defendant's Motion to Suppress in Criminal Case No. 07-00001. Thereafter, the court issued an order denying the motion and the Defendant entered a conditional plea of guilty to conspiracy to distribute methamphetamine and attempted possession of methamphetamine with intent to distribute in this case. The Defendant appealed that order. The Ninth Circuit reversed this court's order in part and found there was insufficient information in the affidavit to support a finding of probable cause but remanded the case for the purpose of developing a full record concerning the applicability of 5 Guam Code Ann. § 73102(2) and the good faith exception to the warrant requirement articulated in *United States v. Leon*, 468 U.S. 897 (1984).

[2] Although the facts have been recited in prior orders and the parties are well aware of them, for completeness of this order, they are again set forth herein.

1 Administration ("DEA") Task Force Officer Marvin R. Desamito ("Officer Desamito") received
2 an anonymous telephone call regarding a DHL package containing crystal methamphetamine
3 ("ice"). *See* Docket No. 18-1 at 14:13-15:25. The caller ("informant") provided Officer
4 Desamito with DHL Tracking Number 8329724874 and told the officer that on December 15,
5 2006, the package had been sent from Fife, Washington. *Id.* at 18- 19:6. While he was on the
6 phone with the informant, Officer Desamito verified the package number with the DHL Website.
7 *Id.* at 19:7-17. He subsequently placed a "lookout" for the DHL package with Guam Customs
8 and Quarantine Agency ("Guam Customs"). *Id.*

On that same date, at approximately 7:00 p.m. Officer Desamito and Officer Michael C. Perkins ("Officers") met with the informant[3] in Hagåtña, Guam. *See* Docket No. 18-5 at 35:24-25. The informant told the Officers that the package had been sent to the Defendant, Ryan Jason Wall ("Defendant"). *See* Docket No. 18-1 at 23:6-8. In addition, the informant told the Officers that the Defendant had previously received a DHL package which had contained "ice" that had been concealed in a package containing "bath products." *Id.* at 23:18-23.

Thereafter, Officer Desamito conducted a criminal history check of the Defendant and learned that he was currently on probation on Guam for charges of Assault and Family Violence, Failure to Appear, Violation of a Court Order, and Assault. *See* Docket No. 18-1 at 24:8-15. Additionally, an arrest warrant had been issued for the Defendant in Tacoma, Washington. *Id.*

On December 30, 2006, Officer Perkins learned that the DHL package had arrived on Guam at 8:00 a.m. *See* Docket No. 18-1 at 30:14-19. A cursory sniff of the package was made by Guam Customs and Quarantine Drug Detector Dogs with negative results. *Id.* at 30:20-3:9. The package was also X-rayed at the Guam International Airport Authority ("GIAA") and the contents were noted to contain a substance suspicious in nature consistent with drug importation. *Id.* at 46:20- 47:3. The package was secured in the Customs Enforcement Team vault at GIAA. *Id.* The Officers then requested for and obtained a search warrant from the magistrate judge on

---

[3] While the gender of the informant was never revealed, for purposes of this order the informant will be referred to in the masculine pronoun.

December 31, 2006.  *See* Criminal Case No. 07-00001, Docket No. 16, Ex. 2.

On December 31, 2006, the search warrant was executed and the DHL package was opened by Guam Customs and Quarantine Officers Jeffery Palacios ("Customs Officer Palacios") and Joseph A. Gange ("Customs Officer Gange"). The DHL package was identified using its airway bill number, 8329724874. The contents were field tested using a Marquis Reagent Kit and tested positive for methamphetamine. The package contained 118.9 gross grams of crystal methamphetamine.

The methamphetamine was replaced with a "sham" product and placed back into the mail delivery system. On January 2, 2007, the Defendant drove to the DHL Office, entered the building and provided the tracking number and received the package. Docket No. 18-5 at 15:2-3. As he was leaving the building, he was arrested.

## II. PROCEDURAL BACKGROUND

On January 1, 2007, the Government filed a complaint charging Defendant Ryan Jason Wall with the offense of Attempted Possession of Methamphetamine Hydrochloride with Intent to Distribute, in violation of 21 U.S.C. § 841(a)(1). *See* Criminal Case No. 07-00001, Docket No. 1.

On January 10, 2007, the grand jury returned an indictment, charging the Defendant with the Attempted Possession offense contained in the Complaint as well as Conspiracy to Distribute Methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846. *See* Criminal Case No. 07-00001, Docket No. 6.

On February 23, 2007, the Defendant filed a Motion to Suppress. *See* Criminal Case No. 07-00001, Docket No. 11. The Defendant claimed the search of the DHL package was illegal because there was lack of probable cause supporting the warrant. *Id.* On March 15, 19 and 20, 2007 the motion came before the court for an evidentiary hearing. On March 23, 2007, the court issued its order denying the motion. *Id.*, Docket No. 22. On that same day, the Government filed an information in the instant case, charging the Defendant with Conspiracy to Distribute Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and Attempted Possession of Methamphetamine with Intent to Distribute, in violation of 21 U.S.C. § 841(a)(1). *See* Docket

No. 2. The Defendant entered conditional pleas to those counts. *See* Docket No. 2.

On June 22, 2007, the Defendant was sentenced to 57 months for both counts followed by a term of 3 years of supervised release. *See* Docket No. 10. On July 5, 2007, the Government moved to dismiss the indictment in Criminal Case No. 07-00001 because of the instant case. *Id.*, Docket No. 22. On July 6, 2007, the Defendant filed his notice of appeal. *See* Docket No. 14.

On June 2, 2008, the Ninth Circuit reversed this court's ruling on the Motion to Suppress. It found the information in the affidavit was insufficient to support a finding of probable cause. The Court was particularly troubled by the handwritten notation in the affidavit that: "[t]he CET [Contraband Enforcement Team] determined the contents were "organic" in nature and through their training and experience consistent with contraband." The Court noted that methamphetamine is a synthetically made product, so to indicate that there was an organic material in the package did not bolster a finding of probable cause, but, in fact, weakened such a finding. However, it remanded the case for the court to consider in the first instant whether 5 Guam Code Ann. § 73102(2) applied or whether there was good faith exception to the warrant requirement. *See* Docket No. 22.

### III. DISCUSSION

As noted, the Ninth Circuit remanded the case for the purpose of determining whether 5 Guam Code Ann. § 73102(2) or the good faith exception to the warrant requirement were applicable.

**A. Whether 5 Guam Code Annotated Section 73102(2) applies**.

*1. Border Search Requirements*

The first issue concerns whether Guam customs officers relying on 5 Guam Code Ann. § 73102(2) were permitted to search the contents of the DHL package as a border search. The Fourth Amendment does not require warrants for stops and searches at the border because the sovereign and its public officials have a right to protect the United States by stopping and examining persons and property entering or leaving it. *See United States v. Montoya de Hernandez*, 473 U.S. 531, 537-38 (1985). Unlike almost all other searches, a border search may be initiated without a warrant, probable cause, or even articulable suspicion. *United States v. Sutter*, 340 F.3d 1022, 1025 (9th Cir. 2003); *see also United States v. Ani*, 138 F.3d 390, 392

(9th Cir. 1998) (opening of incoming international mail by Customs inspector permissible even though actions violated regulation requiring reasonable cause because "border searches of incoming packages require neither probable cause nor a warrant.").

In *United States v. Rowland*, 464 F.3d 899 (9th Cir. 2006), the Ninth Circuit recognized that Guam Customs Officers may make warrantless seizures of any controlled substance imported into Guam pursuant to Guam statute.

> Any [Guam] Customs Officer may: (1) arrest persons who violate a prohibition contained in Article 6 of Title 9 [Guam Code Annotated] Chapter 67; and (2) make seizures of any controlled substance imported into Guam in violation of Article 6 of Title 9 [Guam Code Annotated], Chapter 67 . . . " Guam Code Anno. §73102(1), (2). Article 6, Chapter 67 is codified at section 67.600-.608 of Title 9 of the Guam Code, and pertains to "Importation and Exportation" of controlled substances. Specifically, section 67.601 of title 9 makes it unlawful "to import into Guam any controlled substance in Schedule I or II of this Act," subject to exceptions for approved medical and scientific imports. 9 Guam Code Ann. §67.601(a). Methamphetamine is a Schedule II substance. See 9 Guam Code Ann. §67.205 (defining Schedule II drugs as those listed in Appendix B); 9 Guam Code Ann. App B(C)(2) ("methamphetamine"). It thus appears that Guam Customs officers are statutorily authorized to arrest persons and seize methamphetamine "imported into Guam."

*Rowland*, 464 F.3d at 904.

In this instance, Customs Officer Palacios testified that the DEA task force notified Guam Customs to be on the "look out" for a DHL package being sent to the Defendant. On Saturday, December 30, 2006, the package arrived at the Guam airport. In order to try and locate the package, Guam Customs looked at the airline manifest to see if it was on the list. It was not. *See* Docket 18-4 at 11:1-3. Because the package was un-manifested, Guam Customs apparently released the package to DHL without first searching it. Guam Customs called DHL and learned that the package was indeed in its possession. Later that same day, at approximately 3:00 p.m. Guam Customs Officer Ray Blas retrieved the package from DHL which is located on airport property.

Upon inspecting the package, Customs Officer Palacios thought it suspicious that the label indicated that the package was coming from a business but the label was handwritten – suggesting it was being sent from an individual. Usually commercial packages are professional looking and have embossed company letters. *See* Docket No. 18-4 at 32:1-10. Customs Officer

Gange also found it suspicious that the package was not listed on the manifest. *See* Docket No. 18-4 at 30:4-20. He also mentioned that the way the package was taped was suspicious because it was taped in all corners – any place that could be opened to conceal scents from dogs. *Id.* at 32:11-17. Additionally, the x-ray of the package revealed that the actual contents did not match the customs declaration stating that the package contained plush toys and bath products. *See* Docket No. 18-4 at 33:3-25. There were no toys shown during the x-ray screening and when Customs Officers Palacios and Gange opened the package, no toys were found inside. *Id.*

The Defendant argues that Guam Customs lost the chance to do a further inspection of the package when it released the package to DHL. In other words, the border search effectively ended. At first the Defendant's argument seems to have some appeal. However, upon further consideration, the court is unpersuaded. When the custom officers retrieved the package from DHL, it was still in the stream of transit. There is nothing to suggest it was tampered with or disturbed. To the contrary, the testimony of Customs Officer Gange was that the package was very well taped. DHL is not a private party but, like the post office, it is an entity charged with keeping the integrity of packages until they reach their designated recipients. The conduct of the customs officers in this case was reasonable.

While it was not raised at the hearing, the Defendant argued in his briefing that the DHL package was removed from the airport and later searched by DEA agents at their office. However, the testimony at the hearing was that the package was opened by Customs Officers Gange and Palacios. A border search is valid only if conducted by officials specifically authorized to conduct such searches. *United States v. Whiting*, 781 F.2d 692, 696.

In *United States v. Soto-Soto*, 598 F.2d 545 (9th Cir. 1979), an agent of the Federal Bureau of Investigation ("FBI") inspected the defendant's truck as it entered the United States from Mexico. The agent was specifically looking for stolen vehicles. Upon lifting the hood of the truck, the agent noticed numerous packages beneath the hood. The packages contained marijuana. The agent did not seek or receive permission from the defendant to open the hood. In upholding the district's court's suppression of the evidence, the Ninth Circuit held that the search failed to qualify as a "border search" because the search was conducted by an FBI agent,

not a customs or immigration officer, as part of a general law enforcement effort. *Id.* at 549. The FBI agent was not working in cooperation with customs agents. Thus, exclusion was appropriate because the border search was conducted by an unauthorized agent.

Unlike the situation in *Soto-Soto*, on which the Defendant relies, it is clear from the evidence here that the DHL package was opened by Guam Customs officers working in cooperation with DEA agents. *See United States v. Alfonso*, 759 F.2d 728, 735 (9th Cir. 1985) (rejecting argument that participation in search by persons who were not Customs agents nullified classification of search as border search and holding that "[i]t is sufficient that the search be executed under the authority and direction of those agencies having jurisdiction in safeguarding the borders"). Accordingly, the court finds that the Guam Customs Officers could have opened the DHL package asa border search without the need of a search warrant under 5 Guam Code Ann. § 73102(2).

### *2. Extended Border Search*

When a search is removed in time and place from the border, the courts have repeatedly held that this represents a greater intrusion on the person requiring that under the totality of the circumstances, customs officers had reasonable suspicion of criminal activity in order to justify the search, the so-called "extended border search." *Whiting*, 781 F.2d at 695. For this court to find that the lapse of time between the DHL package's arrival to Guam and Guam Customs' taking possession of the project made this an extended border search, this court would first need to find that Guam Customs had a reasonable suspicion the DHL package contained contraband.

When a search does not occur at a permanent border checkpoint or the functional equivalent thereof, reasonable suspicion to conduct the search is required. In *United States v. Sahanaja*, 430 F.3d 1049, 1054 (9th Cir. 2005), the court noted that reasonable suspicion of criminal activity is required to conduct an extended border search, and referencing the "extended border search doctrine" articulated in *Alexander v. United States*, 362 F.2d 379, 382 (9th Cir. 1966):

> Where ... a search for contraband by Customs officers is not made at or in the immediate vicinity of the point of international border crossing, the legality of the search must be tested by a determination whether the totality of the surrounding

circumstances, including the time and distance elapsed as well as the manner and extent of surveillance, are such as to convince the fact finder with reasonable certainty that any contraband which might be found in or on the vehicles at the time of search was aboard the vehicle at the time of entry into the jurisdiction of the United States. Any search by Customs officials which meets this test is properly called a "border search".

*Sahanaja*, 430 F.3d at 1053-54 (*citing Alexander*, 362 F.2d at 382).

### 3. *Reasonable Suspicion*

"Reasonable suspicion is more than mere suspicion, but less than probable cause. Reasonable suspicion exists when an officer is aware of specific, articulable facts, which together with objective and reasonable inferences, form a basis for suspecting that the particular person to be detained has committed or is about to commit a crime." *United States v. Cotterman*, No. CR 07-1207-TUC-RCC 2009 WL 465028, * 6 (D. Ariz. Feb. 24, 2009). "Reasonable suspicion exists when an officer is aware of specific, articulable facts which, when considered with objective and reasonable inferences, form a basis for particularized suspicion." *United States v. Tiong*, 224 F.3d 1136, 1139 (9th Cir.2000) (quoting *Ornelas v. United States*, 517 U.S. 690, 692 (1996). Here, there was such suspicion based on the testimony of Customs Officer Gange.

> Q. What about this package led you to believe that there was something illegal about it?
>
> A. Well, based on the intel report that we had, the consistency with the tracking number, it not being manifested, and then the item itself described on the external part of the package wasn't consistent with the contents inside during the x-ray inspection.

*See* Docket No. 18-4 at 35:6-12.

> Q. All right. What else did you observe about this package?
>
> A. Just the way it was also taped, tried to conceal scenting for our dogs.
>
> Q. How is that?
>
> A. They tape the corners of the packages, any place that would be opened.

*See* Docket No. 18-4 at 32:11-17.

> Q. You said it was suspicious by who it was sent from didn't you?
>
> A. The sender was Drive and Send.

- 8 -

| | |
|---|---|
| 1 | Q. And you said that was suspicious, didn't you? |
| 2 | A. Based on my experience with these type of packages, yes, it was. |

*See* Docket No. 18-4 at 48:18-23.

Additionally, DEA Officer Desamito knew that the confidential informant had disclosed that the Defendant had previously had had "ICE" concealed within a DHL package containing "bath products" sent to him. *See* Docket No. 18-1 at 23:18-23. The customs declaration on the DHL package in question stated that it too contained "bath products." *See* Docket No. 18-4 at 33:18-21.

The court finds that under the circumstances, Guam Customs Officers possessed a reasonable suspicion of criminal activity and could have opened the DHL package as an extended border search without the need of a search warrant.

**B. Whether the *Leon* Good Faith Exception to the Fourth Amendment Exclusion Rule Applies.**

Search warrants must be supported by affidavits establishing probable cause. Probable cause is defined as "a fair probability that contraband or evidence of a crime will be found." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

### 1. *Leon* Rule

Here, the Ninth Circuit found the warrant was not supported by probable cause, and tasked this court with determining whether the good faith exception to the exclusionary rule applies. *See United States v. Leon,* 468 U.S. 897 (1984). In *Leon*, a confidential informant of unproven reliability told police that two persons known to him were selling drugs from their Burbank, California residence as well as from other residences. *Id.* at 901. Police Officers conducted surveillance and saw several persons with prior criminal histories frequenting the residences. Alberto Leon was among these persons. *Id.* Two persons were seen arriving at the residence and leaving carrying small packages. *Id.* at 902. Two others were seen boarding a flight to Miami. *Id.* Based on these observations, an affidavit summarizing these facts was prepared. *Id.*

Based on the affidavit, the officer prepared an application for a warrant to search. *Id.* A

facially valid search warrant was issued and a large amount of drugs were located. *Id.* Leon others were indicted and charged with conspiracy to possess and distribute cocaine. *Id.* Leon filed a motion to suppress evidence. *Id.* at 903. After an evidentiary hearing, the District Court concluded that this case was a "close one" and the affidavit was insufficient to establish probable cause. *Id.*

The Government argued that the Fourth Amendment exclusionary rule should not apply where evidence was seized in reasonable, good faith reliance on a search warrant. *Id.* The district court denied the government's motion for reconsideration. *Id.* at 904.

The Ninth Circuit affirmed, holding that the informant's credibility was not established, there were no facts indicating the basis for the informant's statements, and for the informant's reliability. *Id.* at 904-05. The panel refused the Government's invitation to recognize a good-faith exception to the Fourth Amendment exclusionary rule. *Id.* at 905. Thereafter, the government petitioned for certiorari on the single issue: "[w]hether the Fourth Amendment exclusionary rule should be modified so as not to bar the admission of evidence seized in reasonable, good faith reliance on a search warrant that is subsequently held to be defective." *Id.*

The Supreme Court recounted that it had declined "to adopt a per se or 'but for' rule that would render inadmissible any evidence that came to light through a chain of causation that began with an illegal arrest." *Id.* at 910-11. "As we discuss below, our evaluation of the costs and benefits of suppressing reliable physical evidence seized by officers reasonably relying on a warrant issued by a detached and neutral magistrate leads to the conclusion that such evidence should be admissible in the prosecution's case in chief." *Id.* at 913. The principal purpose of the exclusionary rule is to deter police misconduct, and in most cases in which a police officer has obtained a warrant from a magistrate, "there is no police illegality and nothing to deter." *Id.* at 920-921.

The Supreme Court held that, even if an affidavit upon which a search warrant is based is insufficient to demonstrate probable cause, evidence seized by law enforcement officers acting in objectively reasonable good-faith reliance upon the warrant is admissible. *Leon*, 468 U.S. 897,

- 10 -

Case 1:07-cr-00025   Document 45   Filed 05/20/09   Page 10 of 14

920. "Issuance of a warrant by a magistrate normally suffices to establish good faith on the part of law enforcement officers who conduct a search pursuant to a warrant." *United States v. Craig*, 861 F.2d 818, 821 (5th Cir. 1988). "Deference to the magistrate, however, is not boundless. It is clear, first, that the deference accorded to a magistrate's finding of probable cause does not preclude inquiry into the knowing or reckless falsity of the affidavit on which that determination was based." *Leon*, 468 U.S. at 914.

The Supreme Court identified at least four situations in which reliance on a warrant would be unreasonable: (1) where the affiant included information in the affidavit that he "knew was false or would have known was false except for his reckless disregard of the truth" and that information misled the issuing judicial officer; (2) where the issuing judge wholly abandons his or her judicial role; (3) where the affidavit is so lacking in indicia of probable cause as to render official belief in its validity entirely unreasonable; and (4) where the warrant itself was so facially deficient that the executing officers could not reasonably presume it to be valid. *Id.* at 923.

"An assessment of the flagrancy of the police misconduct constitutes an important step in the calculus" of applying the exclusionary rule." *Leon*, 468 U.S. at 911. In the present case, there is no evidence that Officer Desamito knowingly or recklessly included false information in the affidavit supporting the search warrant. The Defendant suggests that there may be a question as to whether the inclusion of the word "organic" in the affidavit was reckless. The court finds that the matter concerning the word "organic" is more of a misunderstanding of the term than recklessness. Officer Perkins testified that he did not put much weight on the word. Accordingly, the court will not consider this point further.

Likewise, there is no evidence that the Magistrate Judge acted in any manner other than that of a neutral and detached arbiter of the facts before him or that the search warrant and supporting affidavit were so obviously deficient that an officer could not rely on the warrant's validity. In fact, to the contrary, the affidavit contains a colorable showing of probable cause. *Leon* established that for the good faith exception to apply, the officer's affidavit must establish at least a colorable argument for probable cause. *See Leon*, 468 U.S. at 923. The warrant

- 11 -

Case 1:07-cr-00025   Document 45   Filed 05/20/09   Page 11 of 14

delineated the scope of the search and the thing to be searched. Moreover, the officers executing the warrant reasonably relied on its validity because the Magistrate Judge had issued the warrant. *See Id.* at 921. ("In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination" ).

### 2. *Informant Reliability*

In *United States. v. Clark*, 1 F.3d 831, 832 (9th Cir. 1994), an anonymous source had mailed two letters to law enforcement officers which stated that Clark lived in Missouri and was closely acquainted with a John Yarbro, a Missouri fugitive wanted for marijuana offenses believed to be living in Alaska. The statements of the anonymous source were corroborated to the extent of discovering that Clark had surrendered a Missouri driver's license and obtained an Alaska license. *Id.* at 833. There was no information provided which indicated that there was illegal drug activity or a marijuana cultivation operation. *Id.* An affidavit was submitted which contained generalized assumptions about the characteristics of marijuana cultivators, particularly that they have high electricity usage to provide light to growing plants and that there were alternative heat sources. *Id.*

The Ninth Circuit held that the anonymous tip contained no information regarding marijuana cultivation. *Id.* at 835. It found that the tip was deficient, there was no information which proved that the tip was reliable, there was no basis for the tipster's knowledge, and law enforcement took no steps to corroborate the information. *Id.* at 835-36. Notwithstanding its finding, the court held "[a]lthough we are satisfied that the affidavit was insufficient to establish probable cause, and the question of objective reasonableness in relying on the warrant is a close one, we cannot say that the affidavit was 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 835. "There was enough information so that objectively reasonable officers were entitled to rely on the magistrate judge's determination." *Id*. "Consequently, although we conclude that there was no probable cause to search Clark's home, we refuse to require that the evidence be suppressed, because the officer's reliance on the search warrant was objectively reasonable." *Id.* at 835.

Similar to *Clark*, the inquiry here is one of objective reasonableness. Unlike a "bare

- 12 -

Case 1:07-cr-00025   Document 45   Filed 05/20/09   Page 12 of 14

1  bones" affidavit that contains "wholly conclusory statements, which lack the facts and
2  circumstances from which a magistrate can independently determine probable cause," the
3  affidavit of Officer Desamito in this case provided at least a colorable argument for probable
4  cause to enable the magistrate judge to issue a search warrant. *See Gates*, 462 U.S. at 239
5  (describing "bare bones" affidavits as those in which the affiant merely declares his belief that
6  unlawful activity is occurring without providing any facts from which a judicial officer can
7  independently assess the likelihood that the affiant's belief is correct).

8  The informant provided predictive information. The informant called Officer Desamito
9  and told him that the DHL package containing the drug "ice" was going to be sent to Guam from
10 Fife, Washington to the Defendant. The caller was able to provide the tracking number, which
11 the officer was able to do a check of the tracking number via the DHL website while the caller
12 was on the phone. Thereafter, the informant made himself known to the officers and personally
13 met with Officers Desamito and Michael C. Perkins. The officers found him credible. The
14 informant could be held responsible had his allegations turned out to be false. *See United States
15 v. Terry-Crespo*, 356 F.3d 1170, 1176 (9th Cir.2004) (observing that exposure to legal sanction
16 for providing false information increases reliability of tip). A known informant's tip is thought to
17 be more reliable than an anonymous informant's tip. *See Florida v. J.L.*, 529 U.S. 266, 271
18 (2000). At that meeting, the identity of the recipient of the package was disclosed as the
19 Defendant, Ryan Jason Wall. The informant had indicated that the Defendant had previously
20 received "ice" concealed in bath products and the customs declaration on the DHL package
21 stated that the Defendant was receiving bath products.

22 Although it may be a close question, the totality of the circumstances demonstrate that
23 significant aspects of the confidential informant's tip were sufficiently corroborated by the
24 officers to furnish at least a colorable argument for probable cause. For example, the tip
25 included where the drugs were coming from, where they were to be sent, as well as a DHL
26 tracking number. It does not appear that the instant affidavit was one "so lacking" probable cause
27 as to be a "bare bones" affidavit that no reasonable officer could have relied upon it in good
28 faith.

The Supreme Court has stated that exclusion "has always been our last resort, not our first impulse." *Hudson v. Michigan*, 547 U.S. 586, 591 (2006). "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system. As laid out in our cases, the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." *Herring v. United States*, 129 S.Ct. 695, 702 (2009). The error in this case does not rise to that level.

### III. CONCLUSION

Based upon the foregoing, the court finds that the search of the DHL package was made pursuant to the border search and extended border search provisions contained in 5 Guam Code Ann. § 73102(2). Additionally, the court finds that the good faith exception to the warrant requirement was applicable. Accordingly, the court reaffirms its prior order and **DENIES** the Defendant's Motion to Suppress.

**IT IS SO ORDERED**.



**/s/ Frances M. Tydingco-Gatewood**
**Chief Judge**
**Dated: May 20, 2009**